# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SCARLET SUMMER GILLIAN,      )
                                                      )
    Plaintiff,      )
                                                      )
v.      )      Case No. 2-17-cv-01389-JEO
                                                      )
COWABUNGA, INC. and      )
KRISTOPHER CLEMENS,      )
                                                      )
    Defendants.      )

## **MEMORANDUM OPINION**

In this action, Scarlet Summer Gillian ("Plaintiff") brings claims against her former employer, Cowabunga, Inc. ("Cowabunga"), and a former co-employee, Kristopher Clemens ("Clemens") (collectively, "Defendants"). The case is now before the court on Defendants' Motion to Compel Arbitration. (Doc.[1] 15). Upon consideration, the court[2] concludes that the motion is due to be granted.

## I.  BACKGROUND

Plaintiff first began working for Cowabunga in November 2015. (Doc. 21-1 at 6). Upon employment, Plaintiff signed a "Mutual Agreement to Arbitrate" (the

---

[1] Citations herein to "Doc(s). __" are to the document numbers assigned by the clerk, as reflected on the docket sheet to the pleadings, motions, and other documents in the court file.

[2] The parties have consented to exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2 (Doc. 12).

"Agreement") which included two provisions relevant to the current dispute. Section 2(a) of the Agreement states the following:

> Claims and disputes covered by this Agreement include all claims by Employee against Cowabunga, Inc. . . . and all claims that Cowabunga, Inc., may have against Employee, including, without limitation, any claims Employee may have relating to his/her hiring, terms and conditions of employment, job assignments, payment of any wages, benefits or other forms of compensation, and/or separation from employment . . . .

(Doc. 15-2 at 1). In addition, Section 4(c) of the Agreement provides that "[t]his Agreement . . . shall survive the termination of Employee's employment, and can only be revoked or modified by a writing signed by all parties which specifically states an intent to revoke or modify this Agreement." (Doc. 15-2 at 3).

In March 2016, Plaintiff quit her job with Cowabunga without providing notice. (Docs. 16-1; 21-1 at 25). Cowabunga's records show that Plaintiff was terminated effective March 14, 2016, and was labeled as "NO REHIRE." (Doc. 21-1 at 25). Plaintiff later reapplied to work for Cowabunga and, after initially being told she was ineligible for employment, was rehired and began working as an employee again on May 4, 2016. (Docs. 16 at 1; 1 at ¶ 8). Upon reemployment, Plaintiff did not sign a new arbitration agreement. (Doc. 16).

Plaintiff continued working for Cowabunga through September 2016. (Doc. 1. at ¶ 48). It is during this second period of employment that Plaintiff's claims arose. (Doc. 16 at ¶ 5). Plaintiff asserts that upon being rehired, "she was sexually

harassed and assaulted" by Clemens. (Doc. 15 at ¶ 1). Plaintiff also alleges that she experienced "sexual discrimination in violation of Title VII and that she was not properly paid for the time that she allegedly worked." *Id.*

In their motion to compel arbitration, Defendants contend that the Agreement Plaintiff signed in November 2015 applies to her second period of employment and thereby covers her claims in this case. (Docs. 15 at ¶ 2; 20 at ¶ 2-3). Defendants further assert that there was no revocation of the Agreement by either party. (Doc. 20 at ¶ 6). Plaintiff retorts that all of her claims arose during her second period of employment and that she did not agree to arbitrate any claims after she was rehired. (Doc. 16 at ¶ 5). Plaintiff asserts that because she did not sign a new arbitration agreement when she was reemployed by Cowabunga, she has not waived her right to trial by jury. (Doc. 21 at ¶¶ 5, 7).

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, "establishes a 'federal policy favoring arbitration.'" *Chrysler Fin. Corp. v. Murphy*, No. Civ. A. 97-JEO-2391-S, 1998 WL 34023394, at *2 (N.D. Ala. Aug. 5, 1998) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

3

for the revocation of any contract." 9 U.S.C. § 2. In light of the presumption in favor of arbitration, courts should resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Finally, courts should compel arbitration of a particular grievance "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

## III. DISCUSSION

Where an arbitration agreement contains express language indicating intent for the agreement to survive termination of employment, parties may be compelled to arbitrate claims arising during subsequent re-employment. *Nelson v. Carl Black Chevrolet of Nashville, LLC*, No. 3:17-cv-00687, 2017 WL 3298327, at *5 (M.D. Tenn. Aug. 2, 2017) ("The language specifically provides that the Agreement 'survives' the termination of employment . . . ."); *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 693 (E.D. La. 2013) ("[T]his Agreement shall survive termination of my employment . . . ."); *Burch v. PJ Cheese, Inc.*, 2009 WL

10688971, *3 n.2 (N.D. Ala. 2009) ("The Agreement specifically provides, 'This Agreement to arbitrate shall survive the termination of my employment.'").

In *Anderson v. Waffle House*, the plaintiff employee entered into an arbitration agreement with the defendant employer. *Anderson*, 920 F. Supp. 2d at 687. The plaintiff was later terminated but sought re-employment nearly a year later. *Id.* at 689. Upon being rehired by the defendant, the plaintiff never signed a new arbitration agreement. *Id.* When the plaintiff later brought suit against the defendant, the defendant petitioned the court to compel arbitration by enforcing the arbitration agreement the plaintiff had signed during her prior employment. *Id.* at 686-87. The plaintiff claimed there was no valid agreement to arbitrate because her termination had ended the agreement and she never signed a new agreement subsequent to her re-employment. *Id.* at 689. The court held that the plaintiff was bound to arbitrate and that termination of her employment did not terminate the agreement. *Id.* at 693. The court relied on an express provision of the arbitration agreement that stated it applied to all future claims and would survive termination of employment. *Id.* "[The] survival clause unambiguously reflect[ed] the parties' intent that the arbitration agreement would survive any break in Plaintiff's employment. . . ." *Id.* Further, the agreement provided the exclusive means for

revoking the agreement and neither party had done so. *Id.* Thus, the court found the arbitration agreement enforceable despite plaintiff's break in employment.[3]

In *Nelson v. Carl Black Chevrolet*, the court upheld an arbitration agreement signed during the plaintiff's first period of employment, even though he did not re-sign or renew the agreement when he was rehired by the defendant. *Nelson*, 2017 WL 3298327, at *5. The arbitration agreement provided "that the Agreement 'shall survive the termination of the Employee's employment'; . . . and that the Agreement could 'only be revoked or modified in a written document . . . signed by both the Employee and an authorized representative of the company.'" *Id.* (second omission in original). Beyond the express wording that the agreement was to survive termination of employment, the agreement also conveyed the means by which to revoke the agreement. *Id.* Considering the provision specifying that the agreement survived termination and finding no evidence that the parties had

---

[3] In *Anderson*, the court did note that one court has found to the contrary:

> The Court is aware of one non-binding authority indicating that an independent Arbitration Agreement signed by an employee during one employment period may not apply to claims that arise during subsequent periods of employment if: (1) the arbitration agreement does not clearly encompass all future periods of employment following termination; (2) upon rehire, the employee explicitly refuses to sign an Arbitration Agreement and the employer, as a result of the employee's explicit refusal, waives the requirement; and (3) the events giving rise to the employee's claim occurred after the employee's explicit refusal to sign the arbitration agreement and the employer's waiver. *See Mitchell v. J.V. Indus. Cos., Ltd.*, No. 08–1135, 2008 WL 8444325, at *2-4 (S.D. Tex. Aug. 11, 2008).

*Anderson*, 920 F. Supp. 2d at 694. However, the court went on to find that the facts of the case did not satisfy *Mitchell's* requirements. *Id.* Those circumstances are not met in the present case either.

6

revoked the agreement by the means provided, the court held the arbitration agreement continued to apply to plaintiff's second period of employment. *Id.*

In *Burch v. PJ Cheese*, the court was presented with the question of whether the plaintiff was compelled to arbitrate. *Burch*, 2009 WL 10688971, at *1-2. The plaintiff denied signing an agreement committing him to the defendant's Dispute Resolution Program. *Id.* at *2. The agreement at issue contained a clause stating that the agreement "shall survive the termination of [the plaintiff's] employment." *Id.* While the court considered only the issue of whether there was a question of material fact regarding the plaintiff's signature on the agreement, the plaintiff pleaded in the alternative that, because he did not sign a new agreement after his reemployment, "he [could] not be compelled to arbitrate any claims that arose after he was rehired." *Id.* at *3 n.2. The court did not rule on the plaintiff's alternative argument. *Id.* However, the court noted that the plaintiff would have been compelled to arbitrate because the previous signed agreement provided, "This Agreement to arbitrate shall survive the termination of my employment." *Id*. Therefore, the court concluded that any claims, even those arising from his second period of employment, would be subject to arbitration. *Id*. While the undersigned recognizes that this determination is *dicta*, it is still persuasive.

Here, Plaintiff does not dispute that she signed an Arbitration Agreement during her first period of employment, but she contends that the Agreement applies

only to that period of employment. Because she did not sign a new Agreement after being rehired and all of her claims arose from her second period of employment, Plaintiff contends that she has not agreed to arbitrate her claims. However, she cites no case law to support her contention.

The Arbitration Agreement signed by Plaintiff included a provision that the Agreement "shall survive the termination of Employee's employment." This language is nearly identical to the language in *Anderson*, *Nelson*, and *Burch*. Each of those courts found this language to be a clear expression of each party's intent that the agreements would survive termination of employment and apply to any subsequent employment. The language is broadly worded, clear, and can be interpreted to cover Plaintiff's second period of employment. Further, like the agreement in *Nelson*, the Agreement between Plaintiff and Cowabunga also included the means by which it could be revoked. The Agreement provided that it could "only be revoked or modified by a writing signed by all parties which specifically states an intent to revoke or modify [the] Agreement." This court finds no evidence to indicate that either party exercised this option to revoke the Agreement. Therefore, because the Agreement remained in effect and provided that it survived termination of the employment relationship, Plaintiff is bound by the Agreement to arbitrate her claims despite the fact that they arose during her second period of employment.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to compel arbitration (doc. 15) is due to be **GRANTED**. A separate order consistent with this opinion will be entered.

**DATED** this 30th day of May, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge